# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| JOHN C. SKINNER, Register No. 1069523, | ) |
| Plaintiff, | ) |
| v. | ) No. 07-4162-CV-C-SOW |
| RICHARD G. CORSER, et al., | ) |
| Defendants. | ) |

## REPORT, RECOMMENDATION AND ORDER

Plaintiff John Skinner claims his constitutional rights were violated during an incident in November 2006 when he was given a conduct violation and moved to a more restrictive cell. Defendants Corser, Reed, Dedrick, Whittle, Haslag, Figueroa, Beck, Schmutz, Hartness and Keene have moved for dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), for plaintiff's failure to state a claim against them. Plaintiff responded in opposition to the motion, defendants replied and plaintiff filed a sur-reply.[1]

### Legal Standard

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When applying this standard, the court accepts as true the factual allegations in the complaint and views them in the light most favorable to the plaintiff. Hishon v. King and Spalding, 467 U.S. 69, 73 (1984); Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993).

### Discussion

In his complaint, plaintiff asserts he was in his cell on November 1, 2006, when defendant Keene asked him if he wanted to shower. Plaintiff told Keene to give him a minute to get ready, but defendant Keene moved on down the cells. When plaintiff asked when he would

---

[1] This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

get his shower, Keene told him he had refused it. Plaintiff argued with Keene, asserting that he had not refused a shower, and that his floor would flood if he washed or showered in his cell. Keene treated plaintiff's comments as a threat to flood his cell and then issued him a conduct violation for threats.

As a result, plaintiff was placed in handcuffs and taken to the security cage. He was told he was being placed on special security orders because he had been written up for threats. Plaintiff disputed he had made threats, and so he argued with defendant Corser about the issue.

Defendant Reed came to the area, talked to plaintiff, and told him to strip out so he could be searched and moved to a cell. Plaintiff asked to have the cuffs removed so he could strip out, and they were taken off. Plaintiff then asked defendant Reed to leave the area, and she told him no. Plaintiff refused to remove his clothes in front of defendant Reed, a female. When it became clear that plaintiff would not comply with a direct order to strip out, Captain Campbell was called. Campbell spoke with plaintiff and told him to either strip out or an extraction team would be called. Plaintiff told Campbell to call the team.

At some point prior to the team being called, the officers told plaintiff that he would not dictate how the search would be conducted or who could be present during the search. Plaintiff clearly chose to have the extraction team called rather than to comply with a direct order and to strip out in front of Reed.

Plaintiff states Reed chose to be present during the search in an effort to demean, humiliate and degrade him, because of a prior incident with her. Nevertheless, he does not allege she made any demeaning, humiliating or degrading comments during the November 1, 2006 incident. It is also not clear if Reed would have been present or involved in the incident if plaintiff had not argued with defendant Corser about the validity of the conduct violation.

The extraction team was called and plaintiff was given an additional opportunity to comply with the order. When he refused again, the extraction team took action. Plaintiff states they slammed a shield against him and took him to the floor. He was secured and his outer clothes were removed. Plaintiff claims the officers used more force than was necessary and did not respond to his pleas for help or to his screams of pain. The officers took him to a cell where his remaining clothes were removed, and then the extraction team left.

Within a few minutes, a nurse examined plaintiff, noted his right wrist was swollen, he had bruising and he had other indications of a struggle. Plaintiff states the nurse and medical personnel who saw him later, told him he needed an X-ray of the wrist. He claims his wrist continues to hurt and he has limited movement in it.

Plaintiff indicates his conduct violation for threats was changed to a violation for creating a disturbance, and he claims the use of force was excessive because he was not physically violent or combative.

*1) Unreasonable Search*

Plaintiff alleges defendants invaded his right of privacy and were unreasonable when they ordered him to remove his clothes for a strip-search in front of a female corrections officer. He seeks damages for a violation of his rights under the Fourth and Eighth Amendments.

The Fourth Amendment prohibits only unreasonable searches. Bell v. Wolfish, 441 U.S. 520, 558, 99 S. Ct. 1861, 1884 (1979). In determining whether searches are unreasonable, the court must balance the need for the particular search against the invasion of personal rights that the search entailed. Franklin v. Lockhart, 883 F.2d 654, 656 (1989) (citing Wolfish, 441 U.S. at ___, 99 S. Ct. at 1884). Some of the factors to be considered are the justification for initiating the search, and the scope, manner and place of the search. Id. Additionally, what is "unreasonable" must be considered within the prison context. Merritt-Bey v. Salts, 747 F. Supp. 536, 538 (E.D. Mo. 1990).

In Goff v. Nix, 803 F.2d. 358 (8th Cir. 1986), cert. denied, 484 U.S. 835 (1987), the Supreme Court, relying on Wolfish, held visual body cavity searches were constitutional in a state prison as a condition of any movement by a prisoner outside his/her living unit or before being taken outside the confines of the penitentiary. Franklin, 883 F.2d. at 656 (citing Goff, 803 F.2d at 360). Similar prison searches were also upheld after contact visits with persons from outside of the institution. Wolfish, 441 U.S. at ___, 99 S. Ct. at 1884-85.

Prison officials are granted wide-ranging discretion in the adoption and execution of policies and practices that, in their judgment, are needed to preserve internal order and discipline and to maintain institutional security. Id. In this case, Skinner acknowledges he was being placed on special security orders, and he does not challenge the general requirement that he submit to a strip-search.

3

He asserts, however, that it was unreasonable to require him to submit to the search in front of a female corrections officer. Searches can violate a prisoner's constitutional rights if conducted in such a manner as to constitute "calculated harassment unrelated to prison needs." Seltzer-Bey v. Delo, 66 F.3d 961, 963 (8th Cir. 1995) (citing Hudson v. Palmer, 468 U.S. 517, 530 (1984)). See also Watson v. Jones, 980 F.2d 1165, 1166 (8th Cir. 1992) (allegations in verified complaint of sexually harassing pat-down searches precluded entry of summary judgment).

Here, plaintiff does not assert in his complaint that defendant Reed made any harassing remarks or acted in any manner suggesting improper conduct or intent. Instead, plaintiff states that she refused to leave the area for him to remove his clothes. He makes conclusory remarks regarding her intent, but does not support those remarks with any facts tending to show that her conduct, as a corrections officer, was improper or motivated by plaintiff's complaints against her. She was not the officer who wrote the conduct violation or placed plaintiff on special security orders such that a strip-search was deemed appropriate. The only complaint plaintiff has about defendant Reed being present was that she was female. Thus, the circumstances can be compared to those in Merritt-Bey, 747 F. Supp 536, in which the court determined that a search in front of a female officer did not violate plaintiff's constitutional rights.

The facts, as set forth by plaintiff, do not suggest the order to strip down for a search constitutes calculated harassment unrelated to prison needs. Inmates are not in a position to determine institutional security requirements or to dictate which officers may be present during a search. When plaintiff attempted to decide who could be present, and to disregard the order of a female officer, he compromised the integrity of the unit and the authority of the officer.

Accordingly, the court finds plaintiff has failed to state a claim for which relief can be granted with regard to the reasonableness of the search conducted in this case, whether considered under the Fourth or the Eighth Amendment standards. Plaintiff was not subjected to cruel and unusual punishment or placed into a position where there was an unreasonable risk of bodily harm by requiring a strip-search in the presence of the female officer. At any time prior to the actions of the extraction team, plaintiff could have avoided any risk of harm by complying with the officers' orders.

4

Case 2:07-cv-04162-SOW   Document 18   Filed 01/17/08   Page 4 of 8

*2) Excessive Force*

Plaintiff also claims he was subjected to unnecessary and excessive force.  Plaintiff does not dispute, however, that he refused a direct order and told officers to go ahead and call the extraction team, because he was not going to voluntarily submit to the strip-search in front of defendant Reed.  He acknowledges that although they threatened to do so, defendants did not use mace when informed that it was medically inappropriate because of his asthma.  He claims he was not combative or violent when the extraction team arrived and took him down, and he was in pain, screaming and crying out for relief during the contact.

Prison officials may use force that is reasonable and necessary under the circumstances to achieve a legitimate penal objective.  Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The "unnecessary and wanton infliction of pain," however, violates the Eighth Amendment.  Id. at 319 (citation omitted).  Thus, when a prisoner alleges prison officials used excessive force, the appropriate test is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson v. McMillian, 503 U.S. 1, 6 (1992).  Prison officials act maliciously when they "undertak[e], without just cause or reason, a course of action intended to injure another"; they act sadistically when they "engag[e] in extreme or excessive cruelty."  Howard v. Barnett, 21 F.3d 868, 872 (8th Cir. 1994).  In determining whether prison officials acted maliciously and sadistically for the purpose of causing harm, the fact finder should consider the threat the officials reasonably perceived, the need for force, the relationship between the need for force and the amount of force used, and the injuries inflicted.  Id. at 871.

Prison officials are not liable under the Eighth Amendment simply because it appears, in retrospect, that they used an unreasonable amount of force.  Whitley, 475 U.S. at 319; Jasper v. Thalacker, 999 F.2d 353, 354 (8th Cir. 1993).  When faced with a disturbance, prison officials must act quickly and decisively to restore order.  Hudson, 503 U.S. at 6.  Courts should not interfere with prison administration unless officials have acted in bad faith or without any legitimate purpose.  Stenzel v. Ellis, 916 F.2d 423, 427 (8th Cir. 1990).

Here, plaintiff refused a direct order and was given at least three or four opportunities to avoid the use of force by merely complying with the order to strip out.  These opportunities clearly suggest that the defendants, other than members of the extraction team, were not acting

5

with the purpose of causing plaintiff harm or unnecessary pain.  Instead, they were attempting to restore order and maintain internal security when confronted with a noncompliant inmate who was being placed on special security orders.

The members of the extraction team who actually used the force were also responding to a situation in which an inmate refused to comply with orders.  It was their job to apply force and to take control of the situation.  During the effort to restrain plaintiff, he began screaming and crying out in pain and the officers may have reasonably believed plaintiff was continuing to resist efforts to be restrained and strip-searched.  Thus, plaintiff has not stated a claim with regard to the general actions of the extraction team in using force to control him.

At this stage of the proceedings, however, plaintiff is to be given the benefit of all reasonable inferences and the court must view the factual allegations in the light most favorable to the plaintiff.  Plaintiff asserts that defendant Whittle continued to use excessive force in restraining plaintiff's right wrist, even after plaintiff was restrained and screaming because of the pain.  Plaintiff claims his wrist was injured, and he alleges defendant Whittle knew he was hurting plaintiff and using more force than was needed.  Thus, for purposes of defendants' motion to dismiss, plaintiff has stated a claim for the use of excessive force by defendant Whittle.

The court has considered plaintiff's allegations that the supervisory defendants and others were aware of the excessive force and did not take appropriate corrective action.  Under the circumstances of this case, in which force was used against an admittedly noncompliant inmate during a single, isolated incident for a relatively short time, the court does not find plaintiff has stated a claim for failing to take corrective action.  The supervisory and other defendants were present during the use of force and observed the team's actions.  Plaintiff has not set forth facts, other than excessive pressure on his wrist, which indicate the extraction team engaged in sadistic behavior or with the intent to injure plaintiff.  Thus, the defendants did not see and know unconstitutional actions were being taken, and they were not in a position to judge the amount of pressure being applied to plaintiff's wrist.  Plaintiff's cries of pain were a factor to be considered, but not dispositive on the issue.

*3) Retaliation*

Finally, plaintiff asserts that defendants were retaliating against him because of a prior incident with defendant Reed. Plaintiff's allegations fail to state a claim for which relief can be granted because plaintiff was not entitled to refuse a direct order under the circumstances outlined here. See Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990). See also Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994). It was plaintiff who began the initial argument, repeatedly refused a direct order, and opted for force by the extraction team rather than to comply. Defendants did not act out of retaliation for an unrelated matter, but acted because of plaintiff's behavior on the day of the incident.

Thus, after consideration of the pending motion and the responses and replies thereto, the court recommends that defendants' motion to dismiss be granted on all claims except for that of the use of excessive force by defendant Whittle.

On December 12, 2007, plaintiff moved for an in camera inspection of the videotape of the use of force. Viewing of the videotape is inappropriate at the motion-to-dismiss stage because matters outside of the pleadings are not to be considered by the court in ruling on the motion.

On December 18, 2007, plaintiff also moved for a protective order related to cell searches and a stay of proceedings pending his release from custody on February 12, 2008. Plaintiff asserts that once again, his legal materials were taken or destroyed during a search and he does not have his legal files or papers. The protective order plaintiff requests is inappropriate, absent a response from the defendants. Plaintiff's request for a stay of proceedings until mid-February 2008 is reasonable with regard to discovery and other new matters, but not warranted for the currently existing motions. Thus, it is

ORDERED that plaintiff's motion of December 18, 2007, for a protective order related to cell searches is held in abeyance pending a response to the motion from defendants. It is further

ORDERED that within twenty days, defendants respond to the motion for a protective order. It is further

ORDERED that plaintiff's motion for a stay of proceedings is granted, in part, and denied, in part. All discovery and matters other than 1) pleadings related to the currently

7

pending motion to dismiss, 2) this report, recommendation and order, and 3) plaintiff's motion for a protective order, are stayed until February 15, 2008. [17]  It is further

ORDERED that plaintiff's motion of December 12, 2007, for an in camera inspection of the videotape is denied as premature.  [16]  It is further

RECOMMENDED that defendants' motion of November 13, 2007, to dismiss be granted on all claims against all defendants except for the excessive force claim against defendant Whittle.  [9]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days.  The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report.  Exceptions should not include matters outside of the report and recommendation.  Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation.  The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances.  Failure to make specific written exceptions to this report and recommendation will result in a waiver of the right to appeal.  See L.R. 74.1(a)(2).

Dated this 17th day of January, 2008, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge